Good afternoon may it please the court I am Glenn Allen the plaintiff and appellant in this case I'm also an attorney admitted in this court and will be arguing my appeal but I'd like to mention with respect the presence here at the zoom location of my co-counsel Frederick C Kelly the third can you talk up just a little bit maybe you'll have to sit down I don't know it's hard to hear you I see I'll just raise my voice a little perhaps can you hear me now pardon me for that I have reserved five minutes of my time for rebuttal all litigants who appear before this court consider and properly so that their cases are important but I submit respectfully that my this case is extraordinarily important not merely for its consequences for me which are significant but more momentously for its impact on fundamental principles of freedom of expression and the rule of law as explained in our briefs this impact has many aspects for purposes of this oral argument and without waiving any of my arguments in our briefs I'd like to focus on four of these aspects the Bartnicki issue the barber issue the food line issue I'm sorry the Bartnicki issue the food line issue my defamation claim and my Rico claims at the outset I find that unnecessary in December 2018 I filed my complaint alleging nine claims against the Southern Poverty Law Center and two of its officers my complainant describes with particularity the theft in May 2015 by one Randolph Dilloway of confidential and privileged documents from the National Alliance in violation of Dilloway's fiduciary obligations and his confidentiality agreement and the SPLC defendants involvement in and exploitation of that theft my complaint further describes the SPLC's publication in August 2016 of a widely disseminated article that used some of the Dilloway stolen information to orchestrate my fire firing from the Baltimore City Law Department where I worked as an independent contractor attorney and their later publication of a hate map in which they falsely stated that I had been quote infiltrating the Baltimore City government with so-called neo-nazi ideology my complaint also place my claims to myself in the garden Allen yes mr. Allen did I understand you correctly that you were not going to address your argument on count one the declaratory judgment or say that that's correct I would be glad to if you wish me to I do have limited time and I I elected to not address it unless you I do have a question or two about that particular account assuming that you are entitled to proceed with the filing of that suit and that you're not barred by the Tax Injunction Act or the any or the provisions of the Claritory Judgment Act there's still a question of standing you're standing to bring that claim and I had two questions in that regard one was as we all know you have to have an injury and I wasn't really sure as to what the injury was with regard to count one and paragraph 132 you make the statement that resolving the your questions about the 501c3 status will serve the useful purpose of clarifying the legal relations between the defendant and yourself is that what you contend is the injury of judge Angie yes it does I I have a Damocles sword hanging over my head with the SPLC's propensity for a doxing people and shaming them in public I don't know when they might do that again and I'm still active as an attorney so I the injury I am subject to is this instability and uncertainty that I might be attacked again in the future which would affect my my ability to pursue my profession as an attorney well along that line the is I understand your complaint you do not either alas ask as a form of relief or and I understand it's an intellectual challenge to separate those things I I did cite to the Zimmerman case which I think you took note of in which courts have have somewhat repeatedly in the context of the Credit Repair Act addressed the issue of whether a court of whether an organization that purports to be a 501c3 is in fact acting as a 501c3 and indicating that this wasn't an attempt to undercut their standing with the IRS it was simply an determining whether they are what they claimed it on and yes that that is where I'm drawing the line well if we assume there's an injury then there's a separate standing requirement as to remedy yes and without the revocation of the 501c3 status I'm not sure what remedy the court could give you here I appreciate that question and I know it came up in the Freeliani cases you're not aware of the remedy I think of a declaratory judgment with I assume the SPLC as a law firm would comply with the instructions that came from the premise behavior and comply in the future with with the requirements of a 501c3 and that's that would be the remedy I I am assuming that the SPLC would change its behavior okay thank you I was describing my my my case and I mentioned that my complaint places my claims in the larger context of the SPLC decades-long fraudulent unethical and unlawful conduct for a myriad of other victims the district court dismissed my complaint in November 2019 with prejudice on Bartnicki food line and other grounds no opportunity for men let me then turn to the Bartnicki issues the court will recall that in Bartnicki v Vopper in 2001 the Supreme Court addressed the difficult question of the protections of any that the First Amendment provides to the publication of unlawfully or improperly on the facts of Bartnicki the court held that where the defendants had not participated in the initial unlawful acquisition and had lawfully acquired the information thereafter even though it had been initially obtained illegally by a stranger that the First Amendment shield was appropriate several circuit courts have addressed this and this would be the first opportunity for this court to address that important issue essentially to properly invoke Bartnicki as a First Amendment shield and I'm citing to Justice Stevens majority opinion there are three problems that need to be satisfied first the defendant publisher played no role in the initial theft or illegal acquisition second they they lawfully acquired the information even though was illegally initially obtained and the subject matter of the interception was a matter of the concern this SPLC defendants fail all three let me first address the second problem which I believe provides the most incontrovertible reason that the SPLC's reliance on Bartnicki's holding the allegations in my complaint is specifically those at pages 34 to 37 joint appendix described with faction particularity the SPLC's unlawful acquisition of the information on the six stun guns that Dilloway stole in the National Alliance on or about May 3rd 2015 the SPLC's conduct violated numerous federal statutes including the Alabama statute prohibiting receipt of stolen goods the Alabama statute prohibiting bribery and fiduciary and the federal national stolen property act in the Travel Act it also violated numerous standards of legal ethics to which the SPLC in the law firm is subject an IRS regulation governing 501c3 in short there are multiple levels of unlawful unethical and improper conduct by the SPLC in acquiring unbrodged therefore manifestly it failed the first prong but also failed the first and third one the first one concerns the first step the SPLC involvement and Dilloway's initial effect the district court held my complaint inadequate on that because I hadn't alleged with specificity the interaction between the SPLC and Dilloway prior to May 5th or May 6th when the SPLC acknowledges having received thousands of pages of documents from Dilloway but my allegations are entirely consistent with the likelihood that Dilloway and the SPLC defendants communicated and cooperated before May 6th 2015 they had the motive they had the opportunity they certainly had the resource the pleading obstacle in front of me is that I am not privy to the secret communications between Dilloway and the SPLC only through basic elementary discovery can I learn of these communications the district court unfairly I believe dismissed my complaint with prejudice without giving me an opportunity to get it discovered finally as to the Bartnicki elements I would like to address the issue of matter of public concern I'd like to quote a short lecture from the Supreme Court's 1967 decision they issued in the Board of Regents in which the court addressed the emphasis that may properly be drawn from a person's membership in an unpopular party consistent with our traditions and our cases in that case the communist justice Brennan from the court said and I quote under our traditions police are personal and not a matter of your association and men and adhering to a political party or other organization do not subscribe unqualifiedly to all its platforms or asserted principle justice Brist Brennan's admonition teaches caution in attributing to me the views ascribed to the National Alliance which I have no doubt the court finds highly offensive one can in fact in certain pay issue and all the important First Amendment case by Holmes and Brenda's and then read any others a willingness to give people generous space to experiment with different viewpoints and perhaps grow out of it into wise people for this reason is relevant I think to the public concern issue that the documents linking me to the National Alliance membership 13 years and once over 30 years prior to the SPLC 2017 article I would make two further points on the public concern issue first I was not a person in a position of power as the SPLC plaintiffs I was an independent contract attorney at the lowest rung of the law department's hierarchy was quietly and ethically performing a legal task assignment and second the SPLC's use of my involvement in the Burgess litigation to fabricate a public concern issue was illogical and dishonest the SPL step tactic was to concoct a public concern issue but it was scandalous that a well-known neo-nazi could be trusted to represent the city given that the plaintiff Burgess was African-American but I was representing the city of Baltimore which is predominantly African-American whose leadership is predominantly I was trying to achieve a litigation victory for the city and save it millions of dollars and I was doing it effectively moreover to support its bogus public concern issue the SPL see and it's August 26 article find out his book a well-known neo-nazi lawyer but later in their 2017 hate map they said the exact opposite they said quote nobody knew Allen's involvement with white supremacist groups except for us the SPLC has no sprinkles about saying one thing in one place and the opposite somewhere else if it serves their ends it has cynically and maliciously looking for a pretext to destroy me in that process fundraise to add to its millions of spending and concocted public concerns were non-existent I would turn now to the food line issues which relate to my state tort law claims not counting my defamation claim I had four state law tortious claims two tortious interference claims a restitution claim and a negligent training claim the district court held all my tape short claims to be barred by food line because according to the court I was seeking quote defamation type damages under non-reputational work so therefore state court liability cannot attach unless Allen shows the defendant statements are false this holding is ill-founded for at least three reasons first on the authority of the Supreme Court's 1991 Cohen v. Coles media and the food line decision itself if the food line doctrine applies at all to my tort it does not apply insofar as I've alleged occupational damage which my complaint does repeatedly by identifying my termination for my position at the Baltimore City Law Department is a separate component of my damage my complaint in fact alleges these separate occupational damage seven different times second not all tort claims that involve harmful harmful disclosure of confidential information are defamation type claims that require proof of falsity also there are obviously many examples of this for example if you induce someone to breach their confidentiality agreement that is torched even if the material taken from the confidentiality agreement happens to be true so it is illogical to require falsity in that context third even assuming the food line doctrine applies and my complaint must allege constitutional balance as to my workplace my complaint does so one of the major themes of the SPLC's August 2016 article is that because of my supposed bias and racism I was capable of competently and zealously representing the city of Baltimore divergence in which the plaintiff is African-American for presenting this narrative that SPLC ignored evidence it knew showed this narrative was false namely evidence that I had zealously and competently represented African-Americans in Lloyd and in the Maryland District Court in the waiting case Maryland Court of Appeals in the waiting case that helps create a scholarship for African-American youth through high school cherry-picking evidence that suits their narrative ignoring contrary evidence was held to be a basis for defining the constitutional malice in the Supreme Court's Hart-Hayes and Panoptic case and it shows the SPLC's constitutional malice as well I turn now to my defamation claim which is count seven count eight my complaint at the outset I need to clarify that my defamation claim is not based on the August 2016 article that led to my termination from the Baltimore State Law Department but on the SPLC's later publication of its so-called hate map. The district court became confused on this point directing its defamation analysis mostly to the 2016 article insofar as it focused on the hate map at all. The court's analysis was brief and superficial simply dismissing the hate map statements about me as mere loose figurative or hyperbolic language but both the stature of the SPLC defendants and the words they employed rule out a hyperbole defense. Let me read what the hate map says about me from page 122 of the joint appendix. You are over time just take a few would make maybe wrap up. Okay sure um I would just point out that the hyperbole makes no sense in this case because of the gravitas of the SPLC which is a 501c3 law firm it would be the American Association of University bringing case which I cited in my brief. Thank you very much. Thank you. We'll hear from the other side. Thank you your honor. May it please the court, Chad Bowman on behalf of the Southern Poverty Law Center or SPLC. Your honor, this lawsuit asserts claims over the receipt and publication of truthful information on a matter of public concern. That lies at the heart of First Amendment. And here the context of litigation also is litigation by a political opponent. The district court properly determined that all claims failed as a matter of law and we respectfully ask that this court affirm that ruling. Now the facts here alleged in the complaint are fairly straightforward. A person named Mr. Dilloway had an altercation at the compound of the National Alliance on May 3rd of 2015. Took documents, was escorted off the grounds by police and went to the Southern Poverty Law Center as well as law enforcement on May 6th 2015. Turned over a set of those documents, copies of those documents and the Southern Poverty Law Center wrote a story about it in 2015 because the National Alliance had long been the one of the leading if not the leading neo-Nazi organization in the United States. Its founder left the American Nazi Party to found the National Alliance, wrote the Turner Diaries and it was the National Alliance at this point was attempting to resuscitate itself after having fallen on hard times. The Southern Poverty Law Center wrote this important story of public interest and then a year later when Mr. Allen was working for the city of Baltimore in a public role, wrote a story asking a question about whether it was appropriate for somebody with a long ties to an organization that multiple circuit courts in this country have recognized espouses violent and racist ideology. And in fact has published works that the New York Times reported a couple of weeks ago following the Capitol attacks have been cited as motivating at least 40 terrorist incidents in the United States or hate crimes. Asked the question, is this appropriate given Baltimore's history for this individual to be in public service? In other words, Your Honor, what the Southern Poverty Law Center did here is it gathered information from a source about a matter of public concern and published it. And that is precisely what news organizations do all over the country every day. I'd like to talk a little bit about the Bartnicki issues that Mr. Allen raised. The important thing to remember about Bartnicki is that the wiretap statute at issue in that case, both federal and state law, didn't just bar the unlawful recording of voices, the unlawful wiretap. It also barred the disclosure of those wiretaps. And so the source, Mr. Yoakum, who gave that recording to the newspaper, violated the law. The newspaper violated the law when it published it. And what the Supreme Court said in that case is that the Daily Mail line of authority striking down other laws barring the disclosure of information, whether that was Florida Daily Mail case, whether it was the Florida Star case, says that so long as the publisher does not participate in the illegal act of acquiring the information, physically acquiring it, then the First Amendment protects the receipt of that information and dissemination of that information. It's not unlawfully acquired if the source is supposed to keep something secret. That happens all the time. Can I ask you along that line, counsel? Suppose the government had brought criminal charges against your defendants for receiving stolen property. Does Bernanke protect you there? I think so, Your Honor. I think that they would have. You know, receiving stolen property is a criminal offense. But as Judge Wilkinson noted in his concurrence in the Morrison case, there is a significant First Amendment question about whether the press could constitutionally be prosecuted for receiving information on a matter of public concern. Now, fortunately, there are some nuances here. The documents themselves were copies, as the counsel pointed out. It was akin to a leak situation where you have electronic copies of underlying records. But what Mr. Allen essentially is arguing is the private contractual guarantee or ethical rules somehow make it unlawful to acquire that information when Bartnicki and all of the other Supreme Court and authorities cited in the briefs find that even a statute, a criminal law in point, cannot trump the First Amendment interests in the receipt of information about matters of public concern. So long as the news organization, the publisher itself, didn't participate in the illegal collection of that. Counsel, how broadly would you say that Bartnicki applies? And the reason I ask that is that that was a six to three decision, but there was a concurrence by Justice Breyer and Justice O'Connor that gave the majority a majority. And that concurrence seemed to cabin the Bartnicki holding because they say in the concurrence that they would not extend that holding beyond the present circumstances. So that being the case, how specifically does Bartnicki protect your client here? Your Honor, I would point out that Justice Stevens did write for the court. I agree the concurrence spoke of a balancing test and would take that on. You know, I think that the Stevens rule, the majority rule, is controlling. I think it is in line with prior precedents and in line with what circuit courts around the country have done interpreting Bartnicki since, including the Jean case. But even if there was a balancing test, what the majority said in Bartnicki itself is that it is perhaps mundane, the negotiation over the high school teacher salaries in this one small district. But it is nonetheless a matter of public concern. And in that context, that trumps the ability to protect the privacy of these people having a phone call because there's a matter of public concern and the publisher didn't break the law. Now, there may be a remedy against the person who did the illegal wiretap. There may be a person, a remedy against Mr. Dilloway if he in fact broke obligations of the law in stealing the documents. But punishing the press in this situation is no different than arguing that the New York Times should be sanctioned because it publishes documents that were posted by WikiLeaks. Or any other publisher should be punished for revealing information that a source should not have shared. They do. Sources do share that information. And our position is the First Amendment protects it. So, but what I'm trying to get at, and maybe my colleague was too, is, first of all, in the hypothetical I posed to you, the clients were, the people receiving it, were violating the law. That's part of the hypothetical. But let's take it a step further. Suppose that they had advertised, if you have any bad information about people that we are politically opposed to, we'll pay you $10,000 per story. So not only are they going to receive information that is stolen, but they're going to have paid for it. They're still protected by the First Amendment? Your Honor, I think the situation you outline is much closer to inducement of a crime. It's much closer to participation. But in the hypothetical, the crime is accepting stolen goods. They know that. I'm not saying that's your case necessarily. Let's just assume first that it's hypothetical. I understand, Your Honor. I would answer that the constitutionally significant question is whether the information was stolen before or after it was offered to the publisher. The constitutionally significant question is, was the publisher involved in the theft? If I say to you, I'll give you, in your hypothetical, I'll give you $10,000 if you steal X for me, that's involvement in the theft. If somebody has hacked a server, as in the TNC case cited in the papers, or someone has already stolen information and goes to the press and says, I have this information, it doesn't matter that you knew that it was stolen. Under Bartnicki and Florida Star and that line of authority, the information was done, the theft occurred before the publisher became involved. And I think under that situation, the publisher can accept that information on a matter of public concern. As you say, if you advertise that you're going to give a reward, even if it's before the thing is actually stolen, or even after it's actually stolen, you don't know it's stolen. That makes it a lot murkier. Sorry, Your Honor. I do think that gets a lot closer to inducing, but what I will point out is the allegations in this complaint, Joint Appendix 35 and 36, are very clear, and they include no such allegations. And in fact, in the briefing, Mr. Allen made clear, as he did today, that he does not know. He has no good faith basis to allege that the Southern Poverty Law Center somehow conspired with Mr. Dilloway before his confrontation with the allegedly armed individuals on the compound on May 3rd of 2015 and left, escorted by police. There's no allegations of that. And so the constitutionally relevant question of whether SPLC was involved in the actual theft is a question that is not raised by this case. Just a couple words about a couple of the other prongs that were discussed during the opening section of the argument. This idea that the Southern Poverty Law Center has additional duties because it has a law firm. The Supreme Court is clear that states can regulate attorney speech that has a significant likelihood of prejudicing legal proceedings, but even attorney speech is protected by the First Amendment. And here you have a situation where the Southern Poverty Law Center does pursue public interest litigation, but its intelligence project is entirely separate than that. It's a publisher, used to publish a publication called Klan Watch that's now become Hate Watch, as the hate groups it monitors have grown. But it is a publisher, and it follows and reports on hate groups and radical groups in America. And it's no different than organizations like the NAACP or the ACLU or Heritage Foundation that may litigate in their own name, but also do advocacy. Frankly, the Wall Street Journal and the New York Times both have law departments and litigate cases in their own names, but also are publishers. Here, where the conduct at issue, the publication, the investigation and publication of newsworthy information is separate from any legal proceeding or client work that the Southern Poverty Law Center was doing, we submit the district court was precisely right in saying that there was no heightened free-floating limitation on its speech arising from the fact that it engages in some litigation. I don't know that I need to say a lot about the issues of public concern. Here, they seem fairly straightforward. This, as I mentioned in my outset, this is an organization that is well-known and has been adjudicated as well-known throughout this country as an organization that has espoused violent and racist beliefs and that has inspired acts of hate, violence, and terrorist attacks, including the bombing of the Oklahoma City Federal Building. The New York Times did a story two weeks ago about the founder of the National Alliance's book, which is a Bible for the right called the Turner Diaries, including a section on storming the Capitol and hanging lawmakers that has become popular in the right. This is a matter of public concern for the original 2015 story that this organization was trying to reorganize. This organization was trying to resuscitate itself after having largely fallen apart. In 2016, it's a matter of public concern that a public official, especially a public official involved in civil rights claims, had been associated with this group and raised questions about that. Mr. Allen mentions that he was simply a contract attorney, but he pleads in his complaint on joint appendix page 32 that he expected to become the chief city solicitor in charge of appeals. He was on his way to bigger places within the city of Baltimore. And so, I submit that this is clearly a matter of public concern, at least on par with teacher salary negotiations in a high school. It was that issue in Bartnicki. Okay, but Mr. Bowman, your position, would it change at all if Mr. Allen had not had other aspirations? In other words, if he were just a contract employee, is it your position the fact that he was actually being paid by the city of Baltimore is what created the basis for you to make the statements you did about him? I think that for purposes of evaluating the Bartnicki issue, the issue is, were the documents a matter of public concern when they were turned over in 2015? And that related to the National Alliance. A year later, I do think that the fact, I mean, as the Supreme Court said in Rosenblatt, the qualifications of officials in public office is always a matter of public concern. I think the fact that he was prosecuting on behalf or defending a lawsuit on behalf of a government entity was sufficient. It makes it even clearer that it was a matter of public concern that Mr. Allen has pleaded himself that he was on his way to bigger things. And that the type of cases he was working on created real issues or questions about whether it was appropriate for somebody with this background to be doing that work. Mr. Allen also mentioned the Food Line line of cases. That line of cases, as well put in Food Line, was about publication damages, damages that arise from speech. You can't bring a claim, call it something else, calling it intentional infliction of emotional distress, as in Kessler v. Falwell, calling it tortious interference, and essentially seek the same damages to reputation that you would seek. Under a defamation claim, except if you meet all the requirements of defamation law. And although the complaint argues or the briefing argues that the plaintiff here is not seeking reputational damages, the complaint makes clear that all of the damages flow from the 2016 story. It's not, as in Cohen v. Cowles, a situation where someone had made a promise to Mr. Allen. The Southern Poverty Law Center had made a promise to Mr. Allen that it broke. The damages allegedly arise from publications, the effects that flowed from the publication of information. And because it was truthful information, you can't support a defamation claim. That also means you can't seek those same damages through any other tort. Thank you. Counsel, with regard to the loss of employment claim that Mr. Allen makes, I think in count four and maybe elsewhere. If the complaint had alleged that in addition to the publications that representatives of the defendant called the city of Baltimore or sent them letters or emails and advocated that Mr. Allen be terminated, would those acts be separate and sufficient to sustain the claim outside of the publications? I realize that's a hypothetical because I don't think that's in the complaint. But if there were other acts that were not part of the publication? It depends on the nature of those acts. I think you're right. I think the complaint doesn't allege any further acts other than the publication. And I think that if there were other acts that were illegal or that were improper, that could sustain a claim. But simply writing letters and saying, we urge you to, you know, to fire this person. I think that's protected speech. And so I think that you're hypothetical if Southern Poverty Law Center had, in addition to publishing a story, had posted a petition or had sent a letter. I think that would still be protected by the First Amendment. I'll say just a word. I know I only have a couple of minutes left about the count one, Your Honor, that you had questions about earlier. Our position is that the 28 U.S.C. 2201A, the declaratory judgment rule and the IRS rule 26 U.S.C. 7428 are this claim. You know, plaintiff largely relies on two strands of authority. One is the McLaughlin case, which predated the IRS rule and also predated the Supreme Court decision in Bob Jones University versus Simon. They found that issue not proper for justice. It may be just an academic point, but I'm not sure the district court was correct here because as I read the complaint, there's not a suggestion to restrain the assessment or collection of tax. If anything, it would be to augment the collection of tax. And there are a number of cases, assuming they're standing, that permit a plaintiff to go forward. So I think the district court's reasoning here is not necessarily correct, though certainly the result may be based on a different circumstance. Your Honor, the 2201 Judgment Act says that declaratory judgments may be brought except with respect to federal taxes other than actions brought under Section 7428. Section 7428, which was a 1976 enactment, says that there's a specific procedure regarding determinations of the, quote, initial qualification or continuing qualification of 501c3 organizations. And so I understand your position. We would respectfully suggest that a declaratory judgment about whether the continuing satisfaction. We don't have positions, counsel. We just ask questions. Certainly understand, Your Honor. I see my time has expired. I'm happy to answer questions if the court has it, but otherwise I will rest. Were you in the middle of answering the question? I think that answered it, Your Honor. Thank you. Okay, thank you very much. We appreciate your argument. Mr. Vallen, do you have a rebuttal? Mr. Allen, do you have a rebuttal? I apologize. I got a screen. Can you hear me now? Yes. Yes. A number of things that Mr. Bowman said I would like to respond to. He said that the 2016 article did nothing more than ask a question. It did a lot more than that. It strongly implied that I was an incompetent lawyer and unethical lawyer who shouldn't be working on the Persians case. And I would add that when the SPLC got around to writing its hate map, it claimed credit for getting me fired. It said because of our investigation and expose, he was swiftly fired. So it was boasting that they were the cause of my getting fired. They weren't asking simply an innocent question. Mr. Bowman repeatedly cites the New York Times and to other things that are way outside the record. I don't know how to fend off this. If I could get into discovery, I think I could show, for example, that this allegation that the National Alliance was involved in the 1996 terrorist bombing. I understand the impact that that must have on you. I think that is an outrageous statement. And to ascribe it to me by guilt, by association, is completely contrary to the spirit of the Kayessian case that I mentioned. Since Mr. Bowman has gone way outside the record, let me mention that as a matter of fact, Ms. Beirich did call, it's not in my complaint, but if I had the opportunity to file an amended complaint and it was relevant, I could point out that she did call. And not only this idea that this was simply asking a question, and this is in my complaint, she orchestrated a media furor over it. She orchestrated dozens of newspapers to carry this article. I had multiple calls. I had reporters in front of my house. This was a hit job, really, and it wasn't just asking an innocent question. Mr. Bowman also seems to suggest that the fact that the SPLC is a law firm is irrelevant. But it's relevant in a couple of ways. It's certainly relevant on my defamation claim. I mean, if a law firm says we've investigated so-and-so and found out that he's infiltrated the city government, that's different from some guy on the street just using loose language. There's a gravitas to an SPLC, especially when it's a 501c3. So it does matter that they're a law firm. And also, relating to the balancing, Mr. Bowman, if I understood him correctly, said that Justice Stevens seemed to suggest that there wasn't a balancing, but that's not correct. I mean, if you read the first paragraph, he talks about a balancing of multiple acts. And if you're going to balance, I think it's a relevant factor that the party involved has special obligations, as in the Borner case. They have special obligations as a law firm and as a 501c3. With respect to whether receiving stolen property was something that was countenanced by the Bartnicki case, I would respectfully refer the court to footnote 19 of that opinion. And it says, our holding, of course, does not apply to punishing parties for obtaining the relevant information unlawfully. It would be frivolous to assert, and no one does in these cases, that the First Amendment, in the interest of securing news or otherwise, confers a license on either the reporter or his news source to violate valid criminal laws. Although stealing documents or private wiretapping could provide newsworthy information, neither reporter nor source is immune from conviction for such conduct, whatever the impact on the flow of the news. And they cite to Brandsburg, that's footnote 19. And I also would refer the court to this Gaubatz case, which is an interesting case, because it has some very similar issues. The Council on American Islam versus Gaubatz, which makes the same point. With that, I would like to conclude. But before I do that, it's just a brief conclusion. I would be glad to respond to any questions that the court might have. I don't think we have any. Thank you very much for your argument. We appreciate it. You're welcome. We will take the case under advisement. Thank you. Thank you. I think with that, court is adjourned for the day. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Diana Gribbon Motz, G. Steven Agee, Barbara Milano Keenan